# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WESLEY B. ROBINSON, | ) | CASE NO. 3:24-cv-00544(KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MACY'S INC., *et al*., | ) | MARCH 20, 2025 |
| *Defendants*. | ) | |

## MEMORANDUM OF DECISION
### RE: MOTION TO DISMISS (ECF NO. 49)

Kari A. Dooley, United States District Judge:

Plaintiff Wesley B. Robinson ("Plaintiff"), proceeding *pro se*, commenced this action against Defendants Macy's Inc. ("Macy's"), American Express National Bank ("American Express"), and Citibank, NA ("Citibank") asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1691. Plaintiff's original Complaint was largely bereft of factual allegations. In response to a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) by American Express, the Court ordered Plaintiff to file an Amended Complaint. *See* Orders, ECF Nos. 42, 47. Plaintiff did so, and in addition to his original claims, added claims for purported violations of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801. *See* Second Am. Compl. ("SAC"), ECF No. 48.[1] Defendant American Express moves to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). To date, Plaintiff has not responded to American Express's motion. For the reasons that follow, the Motion to Dismiss is GRANTED.

---

[1] Plaintiff originally filed his Amended Complaint at ECF No. 44. However, that complaint did not comply with Fed. R. Civ. P. 10(a), and the Court directed him to "refile his Amended Complaint and name each defendant in the caption." Order, ECF No. 47. Plaintiff refiled his Second Amended Complaint the following day at ECF No. 48. Although the SAC contains more structure, some factual allegations, and exhibits which shed some light on Plaintiff's claims, the SAC is still very difficult to follow in terms of any factual narrative in support thereof.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). Furthermore, the Court must construe complaints filed by *pro se* litigants liberally to "raise the strongest arguments [the allegations] suggest." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citations and internal quotation marks omitted). A court may consider Documents not expressly incorporated in the complaint if they are "integral" to the complaint. *Id.* A document

is integral to a complaint "'where the complaint relies heavily upon its terms and effect.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)).

**Allegations**

Plaintiff first provides an "overview" of his Second Amended Complaint stating that he brings this action "for damages" pursuant to the FDCPA, the FCRA, and the GLBA. SAC at 1.[2] He generally alleges that all defendants "engaged in deceptive practices, failed to fulfill their legal obligations related to the accurate reporting, disclosure of personal information, and breached contractual agreements by failing to notify and properly disclose the transfer and handling of Plaintiff's account." *Id.* at 2.

Plaintiff divides his complaint into nine "Counts," and asserts claims against American Express in Counts Three, Four, and Five. *Id.* at 8–15. In Count Three, Plaintiff alleges that American Express violated the FDCPA, specifically 15 U.S.C. § 1692e, by making false or misleading representations as to the "owner of the debt associated with Account #: ***********3825," (the "Instant Account")[3] *Id.* at 8. He claims that the original owner of the account is Department Stores National Bank ("DSNB"), and that as such, American Express "does not have the legal authority to report or collect on this debt," but nonetheless reported the account as "derogatory" and "charged off" to credit bureaus. *Id.*[4]

---

[2] Plaintiff did not number the pages of his Second Amended Complaint, and his paragraph numbers reset at each Count. The Court therefore cites to the page numbers provided by the CMECF system upon docketing.

[3] Though Plaintiff included his entire account number in his Second Amended Complaint, the Court only references its last four numbers.

[4] In support of his allegations in Count Three, Plaintiff refers to two documents attached to his Second Amended Complaint as Exhibits 5 and 6. They appear to be reports generated on April 1, 2020, and February 1, 2021, respectively. The documents do not specifically state who prepared them, or why. Based on Plaintiff's descriptions of the two documents as "Dispute Results," SAC at 30, his further elaboration in his exhibit list that Exhibit 5 was "[d]ocumentation of the credit bureau's response to disputes," *id.*, the language surrounding his reference to the exhibits in Count Three ("Defendant falsely verified the accuracy of this information in response to disputes filed by Plaintiff"), *id.* at 9, and the unredacted portions of the exhibits themselves, the Court infers that they are likely responses to disputes filed by Plaintiff. Exhibit 5 indicates that the report is for an "AMEX/DSNB" credit card opened December 19, 2016, and lists the card status as "account charged off" with a balance due of $3,463 that was "past due

In Count Four, Plaintiff alleges that American Express violated the GLBA, 15 U.S.C. § 6802, and the "transparency requirements" of the FCRA by "failing to provide adequate notice of its privacy policies and practices and by unlawfully sharing Plaintiff's nonpublic personal information with non-affiliated third parties without offering an opt-out opportunity." *Id.* at 10. Plaintiff also alleges that these disclosures violated the statutes because he was not notified of them, they included inaccurate personal information, and they were misleading in that the owner of the Instant Account was reported as "MACYS," "AMEX/MACYS," "AMEX/CBNA," "and others," rather than DSNB. *Id.* at 11.[5]

Lastly, Plaintiff alleges in Count Five that American Express violated the FCRA, 15 U.S.C. § 1681s(2)(a) and the FDCPA, 15 U.S.C. § 1692e, again by reporting debt associated with the Instant Account under "various misleading names" rather than DSNB. *Id.* at 12–14. In Count Five, Plaintiff also alleges that the failure to report a transfer of ownership of the debt was a violation of his card agreement which prevented him from properly managing, disputing or paying the debt.

American Express moves to dismiss all claims on the ground that Plaintiff does not plausibly allege any claim under the cited statutes, and further that the GLBA and one of the provisions of the FCRA that Plaintiff relies upon do not provide a private cause of action. The Court agrees. For the reasons that follow, American Express's Motion to Dismiss is GRANTED.

---

as of Mar 2020." SAC, Ex. 5, ECF No. 48-2, at 2. Exhibit 6 is a later report for the same "AMEX/DSNB" card, also showing the account status as "charged off," with "$3,463 past due as of Jan 2021." SAC, Ex. 6, ECF No. 48-3, at 2.

[5] In support of his allegations in Count 4, Plaintiff refers to documents that he attached as exhibits to his Second Amended Complaint: Exhibit 1, the "2016 Contractual Agreement" (the "Card Agreement"), ECF No. 48-1, containing the "original terms of the account," and Exhibits 5 to 13. Exhibits 5 and 6 are described in note 4, *supra*. Plaintiff did not include exhibits 7, 8, or 9 in his exhibit list or as filed attachments. *see* SAC at 30. Exhibits 10 to 13 are various credit reports referencing the Instant Account. Exhibit 10 was generated on June 25, 2021, and shows the "Account name" as "AMEX/DSNB;" Exhibit 11 does not have a generation date but labels the Instant Account as "AMEX/CBNA;" Exhibit 12 was generated on August 8, 2022, and lists the account name as "AMEX/CBNA;" and Exhibit 13 is also undated and lists the Instant Account as "AMEX/CITIBANK, N.A." SAC Ex. 10, ECF No. 48-4, at 1; Ex. 11, ECF No. 48-5, at 1; Ex. 12, ECF No. 48-6, at 1; Ex. 13, ECF No. 48-7, at 1.

**Discussion**

Though Plaintiff has not responded to the motion to dismiss, and his time to do so has long since passed, due to his *pro se* status the Court "does not interpret Plaintiff's failure to respond as consent to the motion and will determine whether 'the pleadings provide sufficient grounds to deny the motion.'" *Hiller v. Farmington Police Dep't, No.* 3:12-CV-1139 CSH, 2015 WL 4619624, at *3 (D. Conn. July 31, 2015) (quoting D. Conn. L. Civ. R. 7(a)(1)).

*Count Three*

In Count Three Plaintiff alleges that American Express violated the FDCPA, by reporting negative information to credit bureaus in violation of 15 U.S.C. § 1692e(2)(A), which prohibits "a debt collector" from falsely representing the "the character, amount, or legal status of any debt…" "in connection with the collection of any debt." Plaintiff alleges that because the "original owner of this account is Department Stores National Bank," American Express "does not have the legal authority to report or collect on this debt." SAC at 8. The Court construes the crux of Plaintiff's allegations to be that American Express misrepresented itself as the owner of Plaintiff's debt in the Instant Account, and thereby American Express falsely represented the character of the debt.

American Express argues that Plaintiff fails to provide factual support for his claim that American Express is not the owner of the Instant Account, and his claim is merely a "formulaic recitation of the elements" of an FDCPA cause of action. Mot. to Dismiss at 3 (quoting *Iqbal*, 556 U.S. at 678).

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged...." 15 U.S.C. § 1692(e). Of import here, the FDCPA distinguishes between creditors and debt collectors. A "creditor" is "any person who

offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). As a general rule, a creditor who is collecting or attempting to collect a debt owed or due to it is not a "debt collector." 15 U.S.C. § 1692a(6)(F); *Vincent v. The Money Store*, 736 F.3d 88, 97 (2d Cir. 2013). "Similarly, a creditor's in-house collection division ... is not considered a debt collector 'so long as [it uses] the creditor's true business name when collecting.'" *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (quoting S. Rep. No. 95–382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698).

To sufficiently plead a violation of the FDCPA, a plaintiff must allege three elements: "(1) that the plaintiff is a 'consumer' who allegedly owes a debt or a person who has been the object of efforts to collect a consumer debt; (2) the defendant collecting the debt is a 'debt collector' as that term is defined by the FDCPA; and (3) that the defendant has engaged in any act or omission in violation of the FDCPA." *Devine v. Terry*, No. 3:13-CV-01023-VLB, 2014 WL 12744802, at \*6 (D. Conn. Sept. 30, 2014); *see also Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016), *aff'd*, 707 F. App'x 724 (2d Cir. 2017) (same). Plaintiff has failed to adequately allege that American Express was a "debt collector" as defined by the FDCPA, or that it violated the FDCPA.

Plaintiff alleges in conclusory fashion, that American Express was "acting as a 'debt collector' under the FDCPA[.]" SAC at 9. A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect… *debts owed … another*." 15 U.S.C. § 1692a, (emphasis added). The FDCPA "does not apply to "creditors" who seek in their own name to collect on debts owed to them*." Houck v. U.S. Bank, N.A. for Citigroup Mortg. Loan Tr. 2007-AR5*, 689 F. App'x 662, 664 (2d Cir. 2017) (citing 15 U.S.C. §

1692a(6)(A)).[6] As Plaintiff has not adequately alleged factual support for his claim that American Express is not the owner of the debt, his conclusory allegation that American Express was "acting as a debt collector" is insufficient to state a claim under the FDCPA.[7] Notwithstanding, even if Plaintiff adequately alleged that American Express was acting as a debt collector (a contention that the Court rejects), and that it transmitted inaccurate factual information to the credit bureaus as alleged, such conduct would still not violate the FDCPA. Though misrepresenting information about a debt to credit bureaus can trigger FDCPA liability, *see Escobar v. Midland Credit Mgmt.*, No. 3:18-CV-819 (MPS), 2019 WL 3751486, at *5–8 (D. Conn. Aug. 8, 2019), Plaintiff has not adequately alleged any actionable misrepresentations by American Express. In this vein, *Iadevaio v. LTD Fin. Servs., L.P.* is instructive. No. 17CV4112JFBSIL, 2019 WL 4094922, at *6 (E.D.N.Y. Aug. 29, 2019). Therein, the court addressed a challenge under a different provision of the FDCPA, 15 U.S.C. § 1692(g)(a), which "sets forth required disclosures for a debt collector's initial communication to a consumer," and "requires that the initial communication include 'the name of the creditor to whom the debt is owed.'" *Id.*

The Plaintiff in *Iadevaio* alleged that a debt collector improperly identified the creditor as "Show Master Card," the trade name of the issued card, rather than Bryant State Bank, the

---

[6] Creditors are subject to FDCPA liability, however, if their actions fall under the "false name exception," which is triggered when "(1) the creditor is collecting its own debts; (2) the creditor "uses" a name other than its own; and (3) the creditor's use of that name falsely indicates that a third person is "collecting or attempting the collect" the debts that the creditor is collecting." *Vincent*, 736 F.3d at 98. This exception is not implicated here, as Plaintiff expressly alleges that American Express used its own name in its alleged misrepresentations to the credit bureaus.

[7] Notably, numerous courts have held that credit card issuers are not debt collectors. *See Daneshrad v. Cohen & Slamowitz, LLP*, No. 05CV2662SJFETB, 2009 WL 637888, at *5 (E.D.N.Y. Mar. 9, 2009) ("Discover is not subject to liability under the FDCPA because it is a creditor, not a debt collector."); *Daros v. Chase Manhattan Bank*, 19 F. App'x 26, 28 (2d Cir. 2001) (affirming summary judgment as to defendant Visa where a Visa credit card was issued by Chase Manhattan bank and the complaint "[did] not allege that VISA took any steps to collect a debt from [plaintiff]."); *O'Rourke v. Am. Exp. Co.*, No. CIV.A. 10-14374, 2011 WL 2711086, at *2 (E.D. Mich. June 9, 2011), *report and recommendation adopted*, No. 10-14374, 2011 WL 2712595 (E.D. Mich. July 13, 2011) (holding that American Express was not a "debt collector" for the purposes of the FDCPA); *Melendez-Torres v. Am. Express Corp.*, No. CIV 06-1264 SEC, 2007 WL 906174, at *3 (D.P.R. Mar. 22, 2007) (same).

institution to which plaintiff owed her debt. *Id.* at 1. The court concluded that, "under the least sophisticated consumer standard," used by courts to determine if a debt collector's communication violates the FDCPA,[8] the defendant's use of "Show Master Card," was not a violation. *Id.* at 7. The court held that "if the least sophisticated consumer would understand from a brand or trade name who the creditor is (because it is the name under which the company usually transacts business and/or it is a name that has been used since the inception of the credit relationship), the use of that brand or trade name to identify the creditor in a collection letter does not run afoul of the FDCPA." *Id.* at 6. *See also Maguire*, 147 at 235 ("Although a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the "name under which it usually transacts business, or a commonly-used acronym[.]" (internal quotation marks and citation omitted); *Berk v. J.P. Morgan Chase Bank, N.A.*, No. CIV.A. 11-2715, 2011 WL 4467746, at *4 (E.D. Pa. Sept. 26, 2011) ("No reasonable person would find that "Chase Auto Loans" is a false identification of any of the named Chase defendants—JPMorgan Chase Bank, JPMorgan Chase & Co., or Chase Auto Finance Corporation.").

Here, Plaintiff alleges that American Express used "incorrect or misleading names" to include "MACYS," "MACYS/AMEX," "AMEX/MACYS," "AMEX/CBNA," "AMEX CITIBANK,NA"[9] "AMEX/DSNB," "AMEX DEPARTMENT STORES N," and

---

[8] "In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." *Maguire*, 147 F.3d at 236 (citations omitted). "This objective standard is designed to protect all consumers, the gullible as well as the shrewd, while at the same time protecting debt collectors from liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* (citations and internal quotations marks omitted).

[9] The Court takes judicial notice of records of the Office of the Comptroller of the Currency ("OCC"), which show that DSNB merged with Citibank, N.A., as of July 1, 2022, with Citibank N.A. as the survivor corporation. OCC Corporate Application 2022-LB-Combination-325667, https://apps.occ.gov/CAAS_CATS/CAAS_Details.aspx? FilingTypeID=11&FilingID=325667&FilingSubtypeID=1037 (Last Visited Mar. 12, 2025); *Red Rock Sourcing LLC v. JGX LLC*, No. 21 CIV. 1054 (JPC), 2024 WL 1243325, at *13 (S.D.N.Y. Mar. 22, 2024). In light of this merger, any reporting under a name including Citibank, N.A. or a variant thereof accurately represented ownership of the debt in the Instant Account on or after July 1, 2022.

"MACYS/CBNA." SAC at 13.[10] Plaintiff acknowledges that he obtained a Macy's branded American Express card through DSNB (later Citibank). *See* SAC Ex. 1 ("Card Agreement"), ECF No. 48-1, at 2 (Identifying the card as a "Department Stores National Bank American Express Credit Card"). And as was the case in *Iadevaio* Plaintiff's allegedly misleading labels are clearly "the use of [a] brand or trade name," would not confuse the least sophisticated consumer, and thus do not violate the FDCPA. Indeed, Plaintiff's Exhibits 5 and 6, purportedly produced by a credit bureau, both identify the Instant Account as an "AMEX/DSNB" account. It is apparent, therefore, that the credit bureau fully understood that the account was related to an American Express card issued by DSNB.

For the foregoing reasons, Plaintiff has failed to adequately allege that American Express was a "debt collector" or that it engaged in any acts or omissions in violation of the FDCPA. Count Three is dismissed.

*Count 4*

In Count Four, Plaintiff alleges that American Express violated the GLBA, 15 U.S.C. § 6802, and the "transparency requirements" of the FCRA. *Id.* at 10. American Express argues that Plaintiff's GLBA claims should be dismissed because the GLBA does not provide a private right of action, and because Plaintiff's claims are belied by language from the Card Agreement that he attached to his complaint. Mot. to Dismiss at 3–4.[11]

The Court agrees. "Private citizens are not listed among authorized enforcers of the [GLBA]." *Rivera v. Gatestone & Co.*, No. 3:23-CV-00035-MPS, 2023 WL 5530685, at *4 (D.

---

[10] Plaintiff includes this more extensive list under Count Five rather than Count Three. However, because the claim in Count Five relates to the same factual allegation, that American Express misreported the debt in the Instant Account under misleading names, the Court considers it in connection with Count Three.

[11] American Express does not address Plaintiff's FCRA claim in Count Four, but includes the appropriate analysis in the portion of its Motion to Dismiss addressing Count Five. *See* Mot. to Dismiss at 3–5.

Conn. Aug. 28, 2023); *see also Farley v. Williams*, No. 02-cv-0667C, 2005 WL 3579060, at *3 (W.D.N.Y. Dec. 30, 2005) ("Every case to have addressed the issue has held that the GLBA does not provide for a private right of action." (collecting cases)). Plaintiff's claims that American Express violated the GLBA, specifically that it failed to provide Plaintiff with privacy notices and opt out information, are dismissed.

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "The FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *O'Diah v. New York City*, No. 02 CIV. 274 (DLC), 2002 WL 1941179, at *12 (S.D.N.Y. Aug. 21, 2002). "The term 'furnishers of information' is not defined in the statute, *see* 15 U.S.C. § 1681a, but it has been interpreted to mean 'entities that transmit, to credit reporting agencies, information relating to debts owed by consumers[.]'" *Lewis v. Navy*, No. 21-CV-9131 (LTS), 2022 WL 329195, at *2, n.1 (S.D.N.Y. Feb. 2, 2022) (quoting *Kane v. Guaranty Residential Lending, Inc.*, No. 04–CV–4847, 2005 WL 1153623, at *3 (S.D.N.Y. May 16, 2005). Courts in this circuit have considered credit card companies, such as American Express, to be "furnisher[s] of information" under the FCRA. *See, e.g., Miller v. Cap. One Bank (USA) N.A.*, No. 24-CV-2834 (NRM)(JAM), 2024 WL 4654222, at *2 (E.D.N.Y. Nov. 1, 2024); *Varlack v. Transunion*, No. 23-CV-6760 (LTS), 2023 WL 6608980, at *3 (S.D.N.Y. Oct. 10, 2023); *Paul v. Am. Express*, No. 22-CV-5728 (LTS), 2023 WL 35335, at *2, n.1 (S.D.N.Y. Jan. 3, 2023) ("The Court assumes for purposes of this order that Defendant American Express is a furnisher of information.").

Two sections of the FCRA impose duties on furnishers of information to consumer reporting agencies. Section 1681s-2(a) prohibits a person from furnishing "any information

relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." This section applies when the furnisher is alerted to the inaccuracies by the consumer. *See Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 77 (W.D.N.Y. 2018). However, § 1681s-2(d) specifies that § 1681s-2(a) "shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title," and as such "there is no private cause of action for violations of § 1681s–2(a)." *Paul*, 2023 WL 35335, at *2 (quoting *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012)).

Section 1681s-2(b) imposes a duty on furnishers when they receive notice from a credit reporting agency that "there is a dispute as to the completeness or accuracy of the information provided to that reporting agency." *Comunale*, 328 F. Supp. 3d at 77–78. It requires the furnisher to "conduct an investigation into the information in question," and "disseminate the results of that investigation" *Id.* (quoting *Kane*, 2005 WL 1153623 at *3). There is a private right of action under § 1681s-2(b), but the provision only applies if "the person reporting information… received notice of the dispute from a consumer reporting agency." *MacPherson v. JP Morgan Chase Bank, N.A.*, No. 3:09CV1774 (AWT), 2010 WL 3081278, at *4 (D. Conn. Aug. 5, 2010), *aff'd sub nom. Macpherson v. JPMorgan Chase Bank*, N.A., 665 F.3d 45 (2d Cir. 2011).

Plaintiff alleges that American Express disclosed Plaintiff's "nonpublic personal information," to "non-affiliated third parties" without properly notifying Plaintiff. He specifies eight such parties to whom his information was allegedly disclosed, including Experian, Equifax, and TransUnion. SAC at 10.[12] It is utterly unclear how these allegations fall within the scope of the FCRA in the first instance, but even if they did, Plaintiff does not allege that American Express

---

[12] The other entities are Credit Control, LLC, ARS National Services, Inc., Capital Management, Radius Global Solutions, LLC, and Cavalry Portfolio Services, LLC. SAC at 10.

was informed, by any person or entity, that the (unspecified) information it allegedly furnished to credit reporting agencies was inaccurate. And he certainly does not allege that any reporting agency notified American Express that it received inaccurate information about Plaintiff's account, or that American Express failed to initiate an investigation. Plaintiff has therefore failed to allege any facts by which to plausibly allege that American Express violated the FCRA, and his claims in Count Four are dismissed.

*Count Five*

In Count Five, Plaintiff claims that American Express violated the FCRA and the FDCPA, again predicated on American Express's allegedly "misleading representation of ownership" of the instant account, in that American Express reported the name on the account as "MACYS," "MACYS/AMEX," 'AMEX/MACYS," 'AMEX/CBNA," "AMEX    CITIBANK,NA," "AMEX/DSNB," "AMEX DEPARTMENT STORES N," and "MACYS/CBNA," rather than DSNB. SAC at 13. He also claims that both statutes were violated when American Express breached the notice provisions of the card agreement and that the failure to notify him of the transfer of ownership and continued reporting under various other entities' names prevented him from properly managing, disputing or paying the debt.

As the Court discussed in detail above, Plaintiff failed to adequately allege in Count Three that American Express was a "debt collector" as defined by the FDCPA, or that it engaged in any acts or omissions prohibited by the FDCPA. Plaintiff's factual allegations in Count Five are largely indistinguishable from those in Count Three. Therefore, his FDCPA claim in Count Five is dismissed.

In Count Five Plaintiff specifies that he brings his FCRA claim pursuant to 15 U.S.C. § 1681s-2(a). As noted above, that subsection of the FCRA does not provide a private right of action. *See Paul*, 2023 WL 35335, at *2. Plaintiff's FCRA claim in Count Five is therefore dismissed.

**Conclusion**

 For the foregoing reasons, American Express's Motion to Dismiss (ECF No. 49) is GRANTED. The Clerk of the Court is instructed to terminate American Express National Bank as a defendant in this case.

 **SO ORDERED** at Bridgeport, Connecticut, this 20th day of March 2025.


 */s/ Kari A. Dooley*
 KARI A. DOOLEY
 UNITED STATES DISTRICT JUDGE