UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WESLEY B. ROBINSON, )<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>MACY'S INC., *et al*., )<br>*Defendants*. ) | CASE NO. 3:24-cv-00544 (KAD)<br><br><br><br><br>MARCH 20, 2025 |

### ORDER COMPELLING ARBITRATION AND STAYING CASE AS TO DEFENDANTS MACY'S INC AND CITIBANK, NA

Kari A. Dooley, United States District Judge:

Plaintiff Wesley B. Robinson ("Plaintiff") commenced this action against Defendants Macy's Inc. ("Macy's"), American Express National Bank ("American Express"), and Citibank, NA ("Citibank") asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1691. Plaintiff's original Complaint was largely bereft of factual allegations. In granting a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) filed by American Express, the Court ordered Plaintiff to file an Amended Complaint. Orders, ECF Nos. 42, 47. Plaintiff did so, and in addition to his original claims, added claims for violations of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801. *See* Second Am. Compl. ("SAC"), ECF No. 48.[1] Defendant Citibank, joined by Defendant Macy's (the "Moving Defendants") seek to compel arbitration and stay this action pending same. *See* Mot. to Compel Arbitration ("Mot. to Compel"), ECF No. 29; Joinder to Mot. to Compel, ECF No. 39. Plaintiff opposes the motion. *See* Pl.'s Opp'n, ECF No. 37. For the reasons that follow,

---

[1] Plaintiff originally filed his Amended Complaint at ECF No. 44. However, that complaint did not comply with Fed. R. Civ. P. 10(a), and the Court directed him to "refile his Amended Complaint and name each defendant in the caption." Order, ECF No. 47. Plaintiff refiled his Second Amended Complaint the following day at ECF No. 48.

the motions to compel arbitration are GRANTED and this matter is STAYED pending same as to Macy's Inc. and Citibank, NA.

**Standard of Review**

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quotation marks, alteration, and citation omitted). A party aggrieved by another party's failure or refusal to arbitrate may petition the district court for an order directing that arbitration commence in the manner provided for in the parties' agreement. 9 U.S.C. § 4. In deciding whether arbitration must be compelled, the Court applies a standard comparable to that applied on a motion for summary judgment. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). Thus, "[w]hile it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 613 n.2 (E.D.N.Y. 2011) (quotation marks and citations omitted).

**Allegations and Facts**

Plaintiff alleges that Macy's and Citibank violated the FCRA through "misleading" and "inaccurate" reporting with respect to debt associated with an account owned by Plaintiff, that they

breached their "original agreement" with him by failing to notify him of transfers or assignments of the debt, and that they violated the FCRA and GLBA by disclosing his personal information to third parties without his notice or consent, reporting inaccurate personal information to credit bureaus, disclosing misleading information about his account, and failing to provide him with a privacy notice or opt-out option. *See* SAC at 2–8, 15–17, 22–25. He further alleges that Citibank violated the FDCPA by attempting to collect a debt which it did not own and disclosing information allowing other entities to do the same, generally reporting false or misleading information to credit bureaus and other entities, and failing to accurately appraise Plaintiff of the status of his account. *See id.* at 17–18, 20–21.

Citibank avers, and Plaintiff does not dispute, that the allegations concern a credit card account in Plaintiff's name.[2] Mot. to Compel at 2. By affidavit, Citibank avers that the Plaintiff opened the account on December 19, 2016, and that a copy of the Card Agreement was provided to him the same day.[3] Decl. of Andrew Grayot ("Grayot Decl."), ECF No. 29-1 at 2. The agreement contemplated the issuance of a Macy's Inc. American Express card by Department Stores National Bank, for which Citibank NA is the survivor corporation as of July 1, 2022. *See* Office of the Comptroller of the Currency ("OCC") Corporate Application 2022-LB-Combination-325667, https://apps.occ.gov/CAAS_CATS/CAAS_Details.aspx?FilingTypeID=11&FilingID=325667&FilingSubtypeID=1037 (Last Visited Mar. 12, 2025).[4] Plaintiff could have, but did not, cancel the

---

[2] In Plaintiff's Second Amended Complaint he references the account number of the account in question, which matches that on the Account Statement that Citibank provided in support of its Motion to Compel. *Compare* Am. Compl., at 2; Grayot Decl., Ex. B ("Account Statement"), ECF No. 29-3, at 2.

[3] The Card Agreement, attached as Exhibit A to the Grayot Declaration, states: "This Credit Card Agreement is your contract with us. It governs the use of your card and account. Please read this Agreement carefully. Keep it for your records." Grayot Decl, Ex. A ("Card Agreement"), ECF No. 29-2, at 3.

[4] The Court may take judicial notice of OCC records. *See Cohen v. Cap. One Funding*, LLC, 489 F. Supp. 3d 33, 46 (E.D.N.Y. 2020); *Red Rock Sourcing LLC v. JGX LLC*, No. 21 CIV. 1054 (JPC), 2024 WL 1243325, at *13 (S.D.N.Y. Mar. 22, 2024).

Card Agreement within thirty days. *See* Grayot Decl, Ex. A ("Card Agreement"), ECF No. 29-2, at 3. Rather, Citibank asserts that by using the credit card, Plaintiff assented to the Card Agreement. Citibank attaches copies of Plaintiff's account statements which demonstrate his use of the credit card. *See* Grayot Decl., Ex. B ("Account Statement"), ECF No. 29-3, at 2.

The Card Agreement provides, in a section titled "Arbitration" (the "Arbitration Provision"):

> THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.

Card Agreement at 8. Under the "Covered Claims" subsection, the agreement provides:

> • *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
>
> • **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

*Id.* (emphasis in original). Under the terms of the agreement Plaintiff had the opportunity to "reject" the Arbitration Provision by "sending a written rejection notice… mailed within 45 days of account opening." *Id.* at 9. Plaintiff did not opt out within 45 days as was his right. Grayot Decl. at 3. Accordingly, Citibank asserts that Plaintiff's claims are subject to the arbitration clause. Similarly, Macy's Inc. argues that it too is entitled to arbitrate these claims under the Card Agreement. Joinder to Mot. to Compel at ¶ 4. In that vein, the agreement by which the Macy's branded card issued provides that claims subject to the arbitration agreement include "claims made by or against anyone connected with [Citibank]." Card Agreement at 8.

4

In response, Plaintiff argues that Citibank has not demonstrated his receipt of the arbitration agreement or that Citibank is the rightful enforcer of such an agreement; that the arbitration agreement is not valid because he did not consent to it; that the clause does not require arbitration; that the clause is optional and he has chosen not to arbitrate; and that the clause is substantively unconscionable. Accordingly, Plaintiff argues, arbitration should not be compelled, and no stay should issue. *See* Pl.'s Opp'n at 2–3.

**Discussion**

In determining whether to compel arbitration, courts consider "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (internal quotation marks omitted). The FAA "embodies a national policy favoring arbitration" and therefore "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Lok v. Experian Info. Sols., Inc.*, No. 21 CV 154 (NSR), 2022 WL 889215, at *1 (S.D.N.Y. Mar. 25, 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)).

*Validity of Agreement to Arbitrate*

The threshold question then is "whether the parties have indeed agreed to arbitrate." *Schnabel*, 697 F.3d at 118. Whether the parties agreed to arbitrate is "determined by state contract law principles," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016), and "the party seeking ... arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (quotation marks, citation,

and alteration omitted). The burden then shifts to the non-moving party, who must "counter with at least '*some evidence* ... to substantiate [his] denial' that an agreement had been made." *Id.* (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) (emphasis added in *Barrows*)).

Citibank satisfied its initial burden via the Grayot declaration, a sworn affidavit from a Citibank vice president who reviewed records and determined that the Card Agreement containing the Arbitration Provision was provided to Plaintiff on December 19, 2016, and that Plaintiff assented to the agreement by using his card and not cancelling within 30 days. Grayot Decl. at 1–2. Plaintiff avers that the arbitration agreement was not valid because he did not receive or consent to the Card Agreement. Pl.'s Opp'n at 1–2.[5]

**Receipt of the Card Agreement**

In his opposition briefing, Plaintiff denies receiving the arbitration provision. Pl.'s Opp'n at 1 ("Plaintiff denies having received or agreeing to any arbitration provision."). "Denying receipt of a contract [] containing an arbitration clause may be sufficient—at least under Connecticut law—to raise an issue of fact requiring the court to proceed summarily to trial of that issue." *Errato*, 2019 WL 3997010, at *11 (citing *Capone v. Electric Boat Corp.*, No. 3:06-cv-1249 (JCH),

---

[5] Before determining whether a binding agreement was formed between the parties, the Court must first determine what law to apply. The Card Agreement contains a provision indicating that "Federal law and the law of South Dakota… govern the terms and enforcement of this agreement." Card Agreement at 9. "Generally speaking, choice-of-law clauses have been applied to determine which state's law governs the validity of an arbitration agreement." *Errato v. Am. Express Co.*, No. 3:18-CV-1634 (VAB), 2019 WL 3997010, at *7 (D. Conn. Aug. 23, 2019) (citing *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004). However, the Second Circuit has cautioned that "[a]pplying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Schnabel*, 697 F.3d at 119. Here, neither Plaintiff nor Citibank address the Card Agreement's choice of law provision in their briefing, and neither cites to any case applying South Dakota law. Indeed, with respect to contract formation, Citibank relies solely on cases applying Connecticut law. *See* Mot. to Compel at 5; Def.'s Reply, ECF No. 40, at 4 ("Under [Connecticut law], acts may constitute acceptance of contracts." (quoting *Errato*, 2019 WL 3997010, at *12). Plaintiff does not object to Citibank's use of Connecticut law. This implied consent, combined with Citibank's reliance on Connecticut cases, is "sufficient to establish choice of law" regarding the acceptance of the cardholder agreement as that of Connecticut. *See Schreiber v. Friedman*, No. 15CV6861CBAJO, 2017 WL 5564114, at *17, n.15 (E.D.N.Y. Mar. 31, 2017) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)).

2006 WL 3741116, at *4 (D. Conn. Dec. 19, 2006) (collecting cases)). However, Plaintiff's memorandum was not sworn, nor does it include any declaration under penalty of perjury pursuant to 28 U.S.C. § 1746, and therefore does not constitute evidence. *See Walpert v. Jaffrey,* 127 F. Supp. 3d 105, 131 (S.D.N.Y. 2015) (citing, *inter alia*, *Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir.2003)). Plaintiff's assertion in his brief that he did not receive the arbitration agreement does not, therefore, create a genuine issue of fact. *See Pierre v. Macy's Inc.*, No. 16CV2556JMAAKT, 2016 WL 11652066, at *4 (E.D.N.Y. Nov. 23, 2016); *McPherson v. Bloomingdale's, LLC*, No. 23CV1084JMAARL, 2023 WL 8527462, at *5 (E.D.N.Y. Dec. 8, 2023).

Further, Plaintiff's assertion that he never received the Card Agreement is belied by Plaintiff's Second Amended Complaint, which, the Court observes, was submitted just over two months after his opposition to the instant motion. Plaintiff attached as an exhibit to the Second Amended Complaint what he purports to be the "2016 Contractual Agreement," containing the "[o]riginal terms of the account." SAC at 30. The agreement that Plaintiff attached contains an arbitration provision that is identical in substance to the Arbitration Provision in the Card Agreement produced by Citibank. *Compare* Card Agreement at 8–10; SAC, Ex. 1 ("Original Agreement"), ECF No. 48-1, at 7–9.

This filing not only shows that Plaintiff had received the Card Agreement, but that he received the Arbitration Provision included therein. Further, his use of the Original Agreement as an exhibit bolstering his claim that the Moving Defendants violated its terms shows that he considered the Card Agreement to be binding on himself as well as the defendants. Sadly, it also demonstrates that Plaintiff's assertions in his opposition to the Motion to Compel were simply untrue.

7

**Acceptance of the Card Agreement**

Plaintiff's argument that he did not accept the arbitration agreement is also without merit. "Connecticut courts have 'held that where a party has accepted benefits under a contract, or claims rights pursuant a contract, it is bound by the provisions in that contract—including arbitration provisions.'" *de Moura Castro by Hilario v. Loanpal*, LLC, 715 F. Supp. 3d 373, 399 (D. Conn. 2024) (quoting *Armetta v. Corvo*, No. X04HHDCV136046616S, 2015 WL 5315247, at *3 (Conn. Super. Ct. Aug. 11, 2015) (collecting cases)). Citibank provided a copy of one of Plaintiff's account statements, showing that he used the card that was subject to the agreement. Account Statement at 2. Under Connecticut law, Plaintiff's use of the credit card constituted acceptance of the Card Agreement, and the Arbitration Provision contained therein. *See Errato*, 2019 WL 3997010, at *12 (citing, *inter alia*, *Schwarzchild v. Martin,* 191 Conn. 316, 321–322 (1983)). *See also Am. Exp. Bank, FSB v. Zorba*, No. CV106001037, 2012 WL 3854645, at *3 (Conn. Super. Ct. Aug. 9, 2012) ("[Plaintiff's] acceptance and use of the benefits of the credit card constituted his acceptance of the terms set forth in the Business Card Credit Agreement.").

*Scope of the Arbitration Provision*

Having determined that the parties agreed to arbitrate, the Court turns to the scope of that agreement. The Arbitration Provision contained in the Card Agreement, by its terms, applies to "any claim" related to the account, and includes language that it should be interpreted "in the broadest way the law will allow." Card Agreement at 8. "The invocation of 'any dispute' in the Agreement 'is the paradigm of a broad clause,'" which gives rise to a presumption of arbitrability. *Benzemann v. Citibank N.A.,* No. 12 CIV. 9145 NRB, 2014 WL 2933140, at *4 (S.D.N.Y. June 27, 2014), *vacated in part*, 806 F.3d 98 (2d Cir. 2015), *and aff'd in part*, 622 F. App'x 16 (2d Cir. 2015) (quoting *Collins & Aikman Prods. Co*. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir.1995)).

That presumption is "only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gaul v. Chrysler Fin. Servs. Americas LLC*, 657 F. App'x 16, 17 (2d Cir. 2016).

Plaintiff brings statutory claims against the Moving Defendants pursuant to the FDCPA, the FCRA, and the GLBA. The Arbitration Provision explicitly includes statutory claims. Card Agreement at 8 ("("[A]ll all Claims are subject to arbitration… including Claims based on… statutory or regulatory provisions…"). "Consistent with the liberal federal policy favoring arbitration embodied in the Federal Arbitration Act… [i]t is by now clear that statutory claims may be the subject of an arbitration agreement." *Am. Fam. Life Assurance Co. of New York v. Baker*, 848 F. App'x 11, 12 (2d Cir. 2021) (internal quotations and citations omitted). Courts in this circuit have held that such "expansive language" as that contained in the instant Arbitration Provision "unambiguously" encompasses both FDCPA and FCRA claims.[6] *Fayez-Olabi v. Credit Acceptance Corp.*, No. 21CV5443AMDLGD, 2022 WL 2918119, at *4 (E.D.N.Y. July 25, 2022); *see also Ostreicher v. TransUnion*, LLC, No. 19-CV-8174 (KMK), 2020 WL 3414633, at *9 (S.D.N.Y. June 22, 2020) (Noting that district courts "regularly" compel arbitration of FCRA claims.).

*Enforcement of the Arbitration Agreement by a Non-Signatory*

Notwithstanding, Plaintiff argues that Citibank cannot enforce the arbitration agreement because the card agreement was entered into with Department Stores National Bank ("DSNB") for a Macy's branded American Express Card. Pl.'s Opp'n at 1. As noted above, Citibank and DSNB merged on July 1, 2022. See OCC Corporate Application 2022-LB-Combination-325667,

---

[6] The Court notes that it could find no case where a court compelled arbitration of a GLBA claim. However, this is almost certainly because the GLBA does not create a private right of action. *Rivera v. Gatestone & Co.*, No. 3:23-CV-00035-MPS, 2023 WL 5530685, at *4 (D. Conn. Aug. 28, 2023) ("[e]very case to have addressed the issue has held that the GLBA does not provide for a private right of action." (internal quotation marks and citation omitted)).

*supra*. The Second Circuit has applied principles of estoppel[7] to establish that a post-merger survivor corporation can invoke arbitration agreements signed by the corporation subsumed in the merger. *See Contec Corp. v. Remote Solution Co.*, Ltd., 398 F.3d 205, 209 (2d Cir. 2005). Additionally, as of December 19, 2016, when Plaintiff received the Card Agreement, Citibank was listed as an "affiliate" of DSNB. Card Agreement at 19 ("Our affiliates include companies with a Citi name, including Citibank, N.A., and Macy's and Bloomingdale's."). The Arbitration Provision expressly included claims "made by or against anyone connected with us or you… such as… an affiliated/parent/subsidiary company." *Id.* at 8. And the same estoppel principles apply "in cases involving subsidiaries, affiliates, agents, and other related business entities." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 144 (2d Cir. 2008). Citibank may therefore invoke and enforce the arbitration agreement that Plaintiff entered into with DSNB.

*Rejection of the Arbitration Provision*

Plaintiff next argues that the Arbitration Provision is optional, relying on the provision's use of "may" and "if." Pl.'s Opp'n at 2. Plaintiff is wrong. The Provision unambiguously provides: "[i]f arbitration is chosen by *any party*, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim." Card Agreement at 8 (emphasis added). Plaintiff could have chosen to reject the Provision, but failed to send a written rejection notice within 45 days of his account opening. *Id.* at 9. Plaintiff therefore "did not take the steps necessary to reject the arbitration provision, but rather took the steps that… would constitute assent." *Ferrie v. DirecTV, LLC, No.* 3:15-CV-409 (JCH), 2016 WL 183474, at *11 (D. Conn. Jan. 12, 2016)

---

[7] "A signatory to an arbitration clause is estopped from refusing to arbitrate against a non-signatory where (1) 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed' and (2) there is 'a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute' with the non-signatory." *Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 640 (S.D.N.Y. 2020), *aff'd*, 6 F.4th 400 (2d Cir. 2021) (quoting *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010).

*Unconscionability*

The Court also rejects Plaintiff's final argument that the arbitration agreement is substantively unconscionable. "The classic definition of an unconscionable contract is one which no man in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept, on the other." *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 327 (D. Conn. 2011) (citing *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 88 (1992)). Under Connecticut law, Plaintiff, the party claiming unconscionability, "typically has the burden of showing that the contract is both procedurally and substantively unconscionable." *Id.* (citing *Bender v. Bender*, 292 Conn. 696, 732, 975 A.2d 636, 658 (2009)).

Without citation to any authority, Plaintiff claims that the Arbitration Provision is unconscionable because it "unfairly revokes [his] legal rights and remedies," by restricting his ability to "pursue claims in a court of law, seek a jury trial, or participate in a class action,"[8] and as a result "significantly diminishes [his] Rights available under federal consumer protection laws." Pl.'s Opp'n at 2—3. Again, Plaintiff is wrong. Preventing parties from litigating disputes in courts of law is the very purpose of an arbitration agreement and does not render one unconscionable. *See Murphy v. Glencore Ltd.*, No. 3:18-CV-01027 (CSH), 2019 WL 549139, at *6 (D. Conn. Feb. 11, 2019) ("An arbitration agreement, by its terms, requires relinquishment of the right to a jury trial."). And, as noted above, courts regularly compel arbitration in lawsuits involving the federal consumer protection laws at issue here. *See generally Bellevue v. Exxon Mobile Corp.*, No. 19-CV-652 (BMC) (LB), 2019 WL 1459041 (E.D.N.Y. Apr. 2, 2019);

---

[8] Class action waivers within an arbitration agreement are "as 'valid, irrevocable, and enforceable' under the FAA as the agreement to resolve the dispute in an arbitral forum." *Frankel v. Citicorp Ins. Servs., Inc.*, No. 11-CV-2293 NGG RER, 2014 WL 10518555, at *7 (E.D.N.Y. Aug. 12, 2014), *report and recommendation adopted*, No. 11-CV-2293 NGG RER, 2015 WL 6021534 (E.D.N.Y. Oct. 14, 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011)).

*Zambrana v. Pressler & Pressler, LLP*, No. 16-CV-2907 (VEC), 2016 WL 7046820 (S.D.N.Y. Dec. 2, 2016); *Lok*, 2022 WL 889215.

The Court concludes, therefore, that Plaintiff entered into a valid arbitration agreement, that Plaintiff's claims fall within the scope of that agreement, that Citibank may enforce the agreement as both a successor and affiliate of DSNB, and that the agreement was not unconscionable. Citibank's motion to compel arbitration is therefore granted.

*Macy's*

On July 22, 2024, Macy's moved to join "each and every argument advanced by Citibank" in its motion to compel," and similarly requested the Court issue an order compelling arbitration and staying this action. Joinder to Mot. to Compel at ¶ 6. On this issue, *Bellevue* is instructive. 2019 WL 1459041. There the court considered whether the agreement at issue might only have been between Citibank and the plaintiff, and therefore did not include Citibank's "co-brand partner," Exxon. *Id.* at *3. In *Bellevue,* Exxon was nowhere mentioned in the card agreement. *Id.* The Court applied the arbitration agreement with respect to claims against Citibank. However, the agreement provided that an arbitrable claim "also includes Claims made by or against anyone connected with us...." and the court concluded that "[a] co-branded credit card seems quite clearly to 'connect' Citibank and Exxon." *Id.* This reasoning is persuasive. Here, the Card Agreement contains the same "connected with" language, and so the Court interprets the Arbitration Provision to include Macy's as Citibank's co-brand partner. Card Agreement at 5. Even without this language, Macy's request is well founded. Macy's is specifically listed as a DSNB and Citibank affiliate in the Card Agreement. *Id.* at 19. And as an affiliate, Macy's may properly invoke the

arbitration agreement entered into by DSNB. *Ross*, 547 F.3d at 144. Macy's motion to compel arbitration is granted.[9]

*Stay of Proceedings*

Pursuant to 9 U.S.C. § 3, a district court "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration…, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…". (emphasis added); *see also Katz v. Cellco P'ship*., 794 F.3d 341, 345–47 (2d Cir. 2015). Plaintiff's protestations notwithstanding, having granted the Moving Defendant's motion to compel arbitration, the Court further grants their motions to stay.

**Conclusion**

The motions to compel arbitration and to stay all proceedings pending arbitration (ECF Nos. 29, 39) are GRANTED.

The Court orders Plaintiff and Defendants Citibank and Macy's to arbitrate their claims under 9 U.S.C. § 4. These proceedings are hereby STAYED as between those parties under 9 U.S.C. § 3.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of March 2025.

                                            */s/ Kari A. Dooley*
                                            KARI A. DOOLEY
                                            UNITED STATES DISTRICT JUDGE

---

[9] To the extent American Express is a named Defendant because the card at issue was a Macy's branded American Express card, the same reasoning would apply. American Express, however, moved to dismiss Plaintiff's Complaint, *see* Mot. to Dismiss, ECF No. 49, and the Court granted the motion, terminating American Express as a defendant in this matter. *See* ECF No. 50.